UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL ANAYA,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>S. SHERMAN, Warden,<br><br>　　　　　　　Respondent. | No. 2:16-cv-0003 JAM KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

    Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2012 conviction for premeditated attempted murder, assault with a firearm, second degree robbery, and assault likely to cause great bodily injury. Petitioner claims that the trial court erred by failing to correct the prosecutor's improper comment on petitioner's failure to call an unavailable witness; and his sentence cruel and unusual punishment because petitioner was 18-years-old when he committed the nonhomicide offense for which he received the functional equivalent of a life sentence without the possibility of parole. After careful review of the record, this court concludes that the petition should be denied.

////

////

1

## II. Procedural History

1. In 2012, a jury found petitioner guilty of premeditated attempted murder, assault with a firearm, second degree robbery, and assault likely to cause great bodily injury. Petitioner's sentence was enhanced because the jury found all of the crimes were committed for the benefit of a criminal street gang, petitioner personally used a firearm in the attempted murder, and he was on bail when he committed the robbery and assault. Petitioner was sentenced to 55 years plus 30 years to life in state prison.

2. Petitioner appealed the conviction to the California Court of Appeal, which affirmed the conviction. (Respondent's Lodged Document ("LD") 1.)

3. Petitioner filed a petition for review in the California Supreme Court, which was denied. (LD 5, 6.)

4. In state court, petitioner filed collateral challenges to his conviction, but he raises only direct appeal claims in this action.

5. Petitioner filed the instant petition on January 4, 2016. (ECF No. 1.)

## III. Facts[1]

In its unpublished opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> [Petitioner], who is a Norteño gang member, committed his crimes during two separate incidents: one at Harvey Park in Galt on November 17, 2010, and the other outside Greenhaven Liquor in Sacramento on October 22, 2011, while he was out on bail on the Harvey Park crimes.
>
> Harvey Park
>
> A group of Sureños and others not affiliated with any gang were socializing at Harvey Park when [petitioner] and some of his fellow Norteño gang members approached. [Petitioner] had a gun in his hand, wrapped in a red bandanna. As [petitioner] approached, he took off his shirt. He fired the gun about five times in the direction of the Sureños. After [petitioner] stopped firing, either because the gun

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Anaya, No. C071288 (April 30, 2014), a copy of which was filed by respondent on April 13, 2016. (ECF No. 12-1.)

2

jammed or he was out of bullets, the Sureños chased the Norteños away.

Just before the shooting, Deanna Evans was at Harvey Park with four children. She saw a group of men aggressively approaching a group that was already in the park. Thinking that there would be trouble, Evans frantically loaded the children into her car, which was in the middle of the two groups. She saw a man with a red bandanna over his hand and heard four gunshots. She saw no other weapon among the two groups of men. After hearing the gunshots, Evans was able to drive away.

The main defense with respect to the Harvey Park incident was that the Sureños had knives and that [petitioner] fired the gun in self-defense. Zackery Ricardos, one of the Norteños with [petitioner] at the time, told a detective that the Sureños "pulled out a knife" and chased the Norteños. Called as a witness at trial, Ricardos claimed not to remember the incident or talking to a detective, but he was impeached with his prior inconsistent statements.

Greenhaven Liquor

D'Angelo Gutierrez dropped out of the Norteño gang and changed his life. As he was leaving Greenhaven Liquor, he was attacked by three men, two of whom could be identified by surveillance camera footage of the attack as [petitioner] and his brother Jonathan. The footage was shown to the jury. The assailants punched Gutierrez in the face and, after he fell to the ground, kicked and punched him numerous times all over the body until he lost consciousness. The assailants took Gutierrez's shirt and shoes and left the scene in a car registered to Jonathan Anaya's girlfriend.

Id. (ECF No. 12-1 at 3-4.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

3

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v.

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

4

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

---

presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed *de novo* in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d

925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

  A. Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor in his trial committed prosecutorial misconduct by suggesting during her closing that an uncalled witness, Luis Salinas, who the prosecutor knew could not be located, did not testify because his testimony would have been unfavorable to the petitioner. Petitioner alleges that this portion of the prosecutor's closing statement violates petitioner's Fifth Amendment rights, citing Griffin, by mentioning an unavailable witness and making the jury believe Salinas was not called because his testimony did not support petitioner's defense and not because he was unavailable. Petitioner argues that this error was prejudicial because it was "critical to attacking the expert's opinion and tainted petitioner's defense." (ECF No. 2 at 18-19.)

Respondent counters that there is a lack of clearly established Supreme Court precedent, barring petitioner's prosecutorial misconduct claim. (ECF No. 12 at 10-11.) Further, the respondent argues that the prosecutor's comment on the petitioner's failure to produce the witness was reasonable because petitioner's counsel asked the jury to consider the ramifications of that witness' possible testimony and because the witness was not legally unavailable. (Id.)

Petitioner responded that legal availability is insufficient because "trial counsel admitted he was informed that the witness fled to Mexico." (ECF No. 18 at 7.) Petitioner contends that the prosecutor knew that petitioner was trying to secure the attendance of the witness and was unable to, which should have been sufficient to "prohibit the prosecutor from making the false claim that the witness was available and could have been called at trial." (Id.)

////

////

## California Court of Appeal Decision

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] contends that the prosecutor committed misconduct by commenting on the defense's failure to call a witness the prosecutor knew was unavailable. We conclude that the comment was not improper because it would have been logical for the defense to call the witness and it was not established that the witness was unavailable. And, in any event, even if the comment was improper, it was harmless beyond a reasonable doubt.
>
> A. Background
>
> During pretrial proceedings and in connection with a defense motion for a continuance, defense counsel informed the trial court that a defense witness could not be found. Counsel believed, from reviewing a recording of a police interview with Luis Salinas, that Salinas, one of [petitioner's] fellow Norteño gang members, would testify that the Sureños at Harvey Park appeared unexpectedly and were wielding knives. However, when questioned by the court about the defense's lack of due diligence in getting Salinas to testify, counsel said that he had not been aware of how valuable Salinas's testimony would be. Counsel also said that Salinas "may now have fled to Mexico, which is what the information I have is." The court informed counsel that it could not grant a continuance without a showing that Salinas might be located.
>
> Salinas did not testify at trial. However, during cross-examination of the prosecution's gang expert Detective Kyle Slater, defense counsel asked whether the detective had considered statements by Salinas when concluding that the Sureños did not provoke [petitioner] and his fellow gang members at Harvey Park. Detective Slater responded that he had considered Salinas's statement. Defense counsel asked Detective Slater whether Salinas's statement that three men with knives had approached Salinas's group was an indication that the initial aggressors were the three men with knives. Defense counsel also reviewed with the detective Salinas's statement that Salinas, upon seeing the men with knives, began to flee and saw [petitioner] raise an object in his right hand and heard gunshots.
>
> During Detective Slater's testimony, the trial court instructed the jury that Salinas's statement was not to be considered for the truth of the matter, but could be used only to help assess Detective Slater's testimony.
>
> In his closing argument, defense counsel criticized Detective Slater for discounting Salinas's statement when concluding that [petitioner] and his fellow Norteño gang members were the aggressors, not the Sureños. In his argument, counsel reviewed Salinas's statement at length and completed the comment, saying, "So why did . . .

8

Detective Slater . . . discount this statement in forming that opinion?" Defense counsel then reviewed other evidence that supported Salinas's statement that the Sureños were the aggressors.

In rebuttal, the prosecutor reminded the jury that Salinas's statement was not admissible for the truth of the matter. And the prosecutor added: "If counsel wanted that to be evidence, he could have called Luis Salinas to the witness stand." Defense counsel objected that the defense was "[n]ot required to call witnesses." But the court overruled the objection.

The prosecutor continued: "If [defense counsel] wanted that evidence, he could have called that witness. I haven't any obligation. Haven't any duty to. [¶] But just like I had to call a bunch of reluctant witnesses, maybe Luis Salinas didn't want to be here. None of the witnesses wanted to be here. He could have done that if that's how he wanted to [ ] produce that evidence and put that evidence before you, but that wasn't done. [¶] So that evidence was introduced for the very limited purpose of testing Detective Slater's opinion in relationship to this being a gang related activity."

B. Analysis

[Petitioner] contends that the prosecutor committed misconduct, violating [petitioner's] state and federal rights to due process and to remain silent, by commenting on the defense's failure to call a witness who was unavailable. Citing People v. Frohner (1976) 65 Cal.App.3d 94, he claims that "a prosecutor may not comment on the defense's failure to call a witness the prosecutor knows is unavailable."

It is error for a prosecutor to comment directly or indirectly upon a [petitioner's] failure to testify in his own defense. (Griffin v. California (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110]; People v. Medina (1995) 11 Cal.4th 694, 755.) The Griffin rule, however, does not preclude comments on the state of the evidence, or on the [petitioner's] failure to introduce material evidence or call logical witnesses. (People v. Bradford (1997) 15 Cal.4th 1229, 1339; People v. Medina, supra, at p. 755.)

In People v. Frohner, supra, 65 Cal.App.3d 94, on which [petitioner] relies, the court found that the prosecutor committed misconduct when he allowed the jury to infer that the [petitioner] purposely failed to call a witness when in fact the prosecutor had a duty to make reasonable efforts to produce the witness and failed to fulfill that duty. (Id. at p. 109.) Under these circumstances, the court found it "inexcusable" that the prosecutor argued to the jury that the defense failed to produce the witness. Coupled with the prosecution's own failure to produce the witness, the comment substantially prejudiced the [petitioner]. (Ibid.)

Here, on the other hand, there is no suggestion that the prosecution failed in a duty to procure Salinas as a witness. While there was some indication that efforts by a previous defense attorney had failed to produce Salinas and trial counsel had information that Salinas "may"

9

> have fled to Mexico, it was far from established that the defense could not have produced Salinas as a witness through reasonably diligent efforts. (See Evid. Code, § 240, subd. (a)(5) [requiring reasonable diligence before witness treated as unavailable].) Therefore, the prosecutor's comment was permissible because it would have been logical for the defense to present testimony from a witness who apparently would have testified (or been impeached with prior inconsistent statements) that the Sureños at Harvey Park approached [petitioner] and his fellow gang members with knives.
>
> In any event, even if the comment by the prosecutor was improper, it was harmless beyond a reasonable doubt. The jury was properly instructed that it could consider Salinas's hearsay statements only for the purpose of evaluating Detective Slater's expert testimony, and the focus of the prosecutor's comment was that the jury must follow the court's instruction, even though defense counsel discussed Salinas's statement at length in cross-examining Detective Slater and in closing argument. The jury could not rely on Salinas's statement to conclude that the Sureños were the aggressors. In light of the evidence that [petitioner] was the initial aggressor, bearing a handgun, it is not reasonable to conclude that the prosecutor's additional comment that the defense did not produce Salinas as a witness affected the verdicts in any way.
>
> Given this conclusion, we need not consider the Attorney General's argument that [petitioner] did not preserve the constitutional objection for appeal or [petitioner's] argument that, if defense counsel failed to preserve the objection, [petitioner's] right to counsel was violated.

(People v. Anaya, ECF No. 12-1 at 5-8.)

Legal Standards

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted); Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010). When prosecutorial conduct is called into question the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly. United States v. Young, 470 U.S. 1, 11 (1985).

The Due Process Clause prohibits a prosecutor from commenting on a defendant's decision not to testify. Griffin v. California, 380 U.S. 609, 615 (1965). While a direct comment

about the defendant's failure to testify violates <u>Griffin</u>, a prosecutor's indirect comment violates <u>Griffin</u> only "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." <u>Lincoln v. Sunn</u>, 807 F.2d 805, 809 (9th Cir. 1987). Inappropriate statements by a prosecutor, particularly during closing arguments, may present a claim of constitutional magnitude if the comments were so prejudicial that they rendered the trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 646-48 (1974). This is because the "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) (citation omitted).

Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. <u>Darden</u>, 477 U.S. at 181-83. <u>See also</u> <u>Towery</u>, 641 F.3d at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable"). Prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996).

<u>Analysis</u>

Petitioner has failed to demonstrate that the prosecutor committed misconduct or that any misconduct resulted in prejudice. Importantly, the prosecutor's comment regarding the defense's ability to call a witness did not address petitioner or his decision not to testify. Here, petitioner seeks to apply <u>Griffin</u> to the prosecutor's comment on petitioner's failure to present a particular defense witness. However, <u>Griffin</u> only applies when a prosecutor makes a direct comment about or alludes to a defendant's failure to testify. Thus, petitioner's Fifth Amendment rights were not violated by the prosecutor's comment.

In any event, even if the prosecutor's comments were improper, the undersigned cannot find that the prosecutor's comment infected the trial with unfairness. The trial judge instructed the jury that Salinas' hearsay statements could only be considered in evaluating Detective Slater's expert testimony. (RT at 196-97.) The trial judge instructed the jury that evidence is the sworn

testimony of witnesses, the exhibits admitted into evidence, and anything else [the judge] told you to consider as evidence." (Clerk's Transcript ("CT") at 258.)  The trial judge also instructed the jury that "[n]othing the attorneys say is evidence." (CT at 258.)  The trial judge instructed the jury that no side was required to call witnesses, and reminded the jury that evidence admitted for a limited purpose may be considered for such limited purpose and no other. (CT at 264. 267.)  Juries are presumed to follow the instructions given to them.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Thus, as found by the state court, the jury could not rely on the hearsay statements by Salinas to find that the Sureños were the aggressors.  In light of these instructions, the jury could not have misconstrued the prosecutor's comment during closing arguments.

Moreover, the prosecutor provided witness testimony that petitioner was in fact the initial aggressor and that petitioner had the gun. (RT at 184.) Given the evidence that petitioner did not act in self-defense, the prosecutor's comment that the defense failed to produce Salinas as a witness would not have had a substantial and injurious effect on the verdict in this case.  The prosecutor's comment alone was not so prejudicial that it would have caused the jury to change their opinion in light of all the evidence produced by the prosecutor.

Therefore, the decision of the California Supreme Court denying petitioner's claim of prosecutorial misconduct is not contrary to or an unreasonable application of United States Supreme Court authority.  Such decision is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.  Accordingly, petitioner is not entitled to relief on this claim.

### B. Alleged Cruel and Unusual Punishment

Petitioner claims that his sentence violates the Eighth Amendment protections against cruel and unusual punishment.  Petitioner argues that since he was 18 years old at the time of the crime his 84-years-to-life sentence constitutes a de facto sentence of life without the possibility of parole because he will not live long enough to be eligible for parole.

////

////

California Court of Appeal Decision

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] contends that his sentence constitutes cruel and unusual punishment under the Eighth Amendment of the federal Constitution because he was only 18 years old when he committed the offenses and the minimum term before he is eligible for parole exceeds his natural life expectancy. The contention is without merit because [petitioner] was an adult when he committed the offenses. [FN2]
>
> "A sentence violates the federal Constitution if it is 'grossly disproportionate' to the severity of the crime. [Citations.]" (People v. Russell (2010) 187 Cal.App.4th 981, 993.)
>
> In support of his contention that his sentence is cruel and unusual, [petitioner] relies on cases in which the [petitioner] was a juvenile when he committed the crimes. He concludes that "[t]he functional equivalent of a mandatory life sentence for an 18–year–old does not permit consideration of factors relevant to youth and is therefore unconstitutional under the Eighth Amendment. . . ." The contention fails because those cases do not support an argument that a sentence imposed for crimes committed when the [petitioner] was an adult is cruel and unusual. (People v. Argeta (2012) 210 Cal.App.4th 1478 (Argeta).)
>
> In People v. Caballero (2012) 55 Cal.4th 262, our Supreme Court held that sentencing a juvenile who commits a nonhomicide offense to a de facto sentence of life without parole is categorically cruel and unusual punishment. (Id. at p. 268; see also Miller v. Alabama (2012) —— U.S. —— [183 L.Ed.2d 407]; Graham v. Florida (2010) 560 U.S. 48 [176 L.Ed.2d 825].) Caballero is distinguishable because [petitioner] here was not a juvenile when he committed his crimes. This distinguishing factor was addressed in Argeta, which stated: "Relying on Graham, . . . Miller, and Caballero, Argeta contends his sentence is categorically cruel and/or unusual. Argeta was 18 and was convicted of first degree murder as a principal. His counsel argues that since the crime was committed only five months after Argeta's 18th birthday the rationale applicable to the sentencing of juveniles should apply to him. We do not agree. These arguments regarding sentencing have been made in the past, and while '[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules . . . [, it] is the point where society draws the line for many purposes between childhood and adulthood.' (Roper v. Simmons (2005) 543 U.S. 551, 574 [161 L.Ed.2d 1]; see Graham, supra, 560 U.S. at p. ____ [130 S. Ct. at p. 2016].) Making an exception for a defendant who committed a crime just five months past his 18th birthday opens the door for the next defendant who is only six months into adulthood. Such arguments would have no logical end, and so a line must be drawn at some point. We respect the line our society has drawn and which the United

13

> States Supreme Court has relied on for sentencing purposes, and conclude Argeta's sentence is not cruel and/or unusual under Graham, Miller, or Caballero." (Argeta, supra, 210 Cal.App.4th at p. 1482.)
>
> In addition to the fact that [petitioner] was an adult when he committed his crimes, the crimes justified severe punishment. He engaged in dangerous, assaultive gang conduct. He endangered not just other gang members but also innocent bystanders, including children, when he attempted to murder the two Sureño gang members at Harvey Park. And after he got out on bail for the Harvey Park shootings, he went right back to his violent ways, participating in a brutal beating. The combination of two premeditated attempted murders on behalf of a gang, using a firearm, along with robbery and assault causing great bodily injury, again to promote his gang, justified the substantial sentence permitted by statute. The sentence was not disproportionate, much less grossly disproportionate, to the severity of his crimes.
>
>> [FN 2: [Petitioner] also contends that trial counsel was constitutionally deficient if counsel's objection that the sentence was "unwarranted" did not preserve for appeal the issue of whether the sentence is cruel and unusual. We reject the contention because the sentence was not cruel and unusual and, therefore, counsel's failure to raise the issue did not cause prejudice to [petitioner]. (See People v. Lawley (2002) 27 Cal.4th 102, 133, fn. 9 [prejudice necessary to ineffective assistance of counsel claim].)]

(People v. Anaya, ECF No. 12-1 at 9-11.)

Legal Standards

The Eighth Amendment, which forbids cruel and unusual punishment, "contains a 'narrow proportionality principle,'" that applies to noncapital sentences and "'does not require strict proportionality between crime and sentence' but rather forbids only extreme sentences that are 'grossly disproportionate' to the crime." Graham v. Florida, 560 U.S. 48, 59-60 (2010) (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000-01 (1991) (Kennedy, J., concurring); some internal quotation marks omitted); see also Lockyer v. Andrade, 538 U.S. 63, 72 (2003) (under "clearly established" Eighth Amendment jurisprudence, "[a] gross disproportionality principle is applicable to sentences for terms of years"). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Andrade, 538 U.S. at 77; see also Rummel v. Estelle, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").

14

In assessing gross disproportionality, the court compares the harshness of the penalty imposed upon petitioner with the gravity of his triggering offenses and criminal history. Ewing v. California, 538 U.S. 11, 28-29 (2003) (O'Connor, J., plurality opinion); Norris v. Morgan, 622 F.3d 1276, 1290 (9th Cir. 2010). "'[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." Graham, 560 U.S. at 60 (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring)); see also Norris, 622 F.3d at 1286 n.12 (describing the three-factor approach set forth herein as the Supreme Court's "authoritative answer to how reviewing courts should apply the proportionality principle to non-capital sentences").

Analysis

Petitioner contends his sentence constitutes cruel and unusual punishment because he was 18 when he committed his controlling offense. However, the Supreme Court previously established that "a line must be drawn . . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest." Roper, 543 U.S. at 574. The state court refers to People v. Argeta, which maintains the age limit for a juvenile at 17 years and younger. People v. Argeta, 210 Cal. App. 4th 1478 (2012) (court rejected the argument of an 18-year-old defendant that the holding of Caballero should be extended).

Petitioner was 18-years-old when he committed his controlling offense. Therefore, as established in Roper, petitioner was considered an adult when he committed his controlling offense and as such his punishment as an adult is not cruel and unusual. Roper, 543 U.S. at 574. Thus, the state court's decision does not violate clearly established federal law under AEDPA. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); White v. Woodall, 134 S. Ct. 1697, 1705 (2014) ("[W]here the precise contours of [a constitutional] right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." (quotations and citation omitted)).

////

Further, a threshold comparison of the gravity of petitioner's offenses with the severity of the sentence imposed does not raise an inference of gross disproportionality. Petitioner was convicted of premeditated attempted murder, assault with a firearm, second degree robbery, and assault likely to cause great bodily injury with enhancements because the crimes were committed for the benefit of a criminal street gang, petitioner personally used a firearm in the attempted murder, and he was on bail when he committed the robbery and assault. Under these circumstances, petitioner's 84-years-to-life sentence does not constitute cruel and unusual punishment. See Harmelin, 501 U.S. at 1002-04 (affirming life without parole sentence for possession of 672 grams of cocaine).

Finally, under state law expanded in 2017, petitioner will be eligible for a parole hearing by 2037. In response to Miller and its progeny, the California Legislature enacted SB 260 and 261 in 2013, codified as California Penal Code § 3051, "establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." People v. Caballero, 55 Cal.4th 262, 269, n. 5. (2012) (16-year-old sentenced to 110-years-to-life for a non-homicide crime should have some opportunity for parole); Cal. Penal Code § 3051. Section 3051 provides that, after a specified number of years of incarceration, the Board of Parole Hearings ("Board") shall conduct a "youth offender parole hearing" to review "the parole suitability of any prisoner who was under 18 years of age at the time of his or her controlling offense." Cal. Penal Code § 3051, subd. (a)(1).

While Miller and Caballero only apply to juveniles, in 2017 the California legislature expanded § 3051 to include offenders who committed their controlling offense under the age of 26. Under § 3051, a person convicted of an offense committed before the age of 26 who receives a sentence of 25-years-or-more-to-life "shall be eligible for release on parole by the Board during his or her 25th year of incarceration at a youth offender parole hearing." Cal. Penal Code § 3051(b)(3).[3]

---

[3] California Penal Code § 3051 was revised in 2016 and again in 2017 to its current version. The maximum age an offender may have been when committing the controlling offense to receive a

Because California enacted and expanded § 3051 to offenders under the age of 26, petitioner's 84-year sentence no longer qualifies as a de facto life sentence. Rather, § 3051 will afford petitioner a meaningful opportunity to obtain release on parole during his 25th year of imprisonment. Cal. Penal Code § 3051, subd. (e). Under § 3051, petitioner will be eligible for a parole hearing by 2037 in his nonhomicide case, affording petitioner a meaningful opportunity to obtain release on parole during his 25th year of imprisonment.[4] Cal. Penal Code § 3501 ((b)(3).

Because petitioner was 18-years-old when he committed his controlling offenses, his sentence of 84-years-to-life does not violate the Eighth Amendment as cruel and unusual punishment. In addition, given the gravity of his offenses, his harsh sentence does not raise an inference of gross disproportionality in violation of the Eighth Amendment. Petitioner's second claim should also be dismissed.

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the

---

youth parole hearing was to 23 in 2016 and to 25 in 2017. (Cal. Penal Code § 3051.)

[4] Petitioner's parole eligibility date, subject to change, is currently listed as March of 2030, and he is identified as a youth offender. This information was obtained from the California Department of Corrections and Rehabilitation Inmate Locator website, https://inmatelocator.cdcr.ca.gov (accessed August 13, 2018).

17

specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 14, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/anay0003.157